## Case No. 4,407.

ELLISON et al. v. The BELLONA.

[Bee, 112.] [1]

District Court, D. South Carolina. Sept., 1798.

Before BEE, District Judge.

In arguing this plea to the jurisdiction of the court, two grounds were taken. 1st. The law of nations. 2d. The 25th article of the treaty between Great Britain and the United States.

Under the first head it was contended that, as this is a vessel of war equipped by a foreign power for capturing vessels of its enemy, and furnished with articles peculiar to such vessels and different from the common engagements made by merchant seamen, the court cannot interfere on this occasion. It is undoubtedly true (and so adjudged in Moitez v. The South Carolina [Case No. 9,697]) that mariners enlisting on board a ship of war or vessel belonging to a sovereign independent state, cannot libel for wages due; and the reason is that seamen in such case look to the government of their nation, by whom they are employed, and who undertake that they shall be paid. In privateers, whose commissions are altogether of a warlike nature, it is settled by contract between the owners and crew what share of prize each party may claim; and before the seamen become entitled, the validity of every prize must be determined. This can only be ascertained by a court of the nation to which the captors belong; neutral nations have no sort of jurisdiction therein. But the case is materially different with respect to letters of marque, which are trading vessels, armed, and commissioned to cruize occasionally. The Bellona is one of these. It appears that she was fitted out at Leith, on a voyage to Jamaica with a cargo of great value, consigned to the captain and another person on board. The crew, consisting of about forty men, was shipped under articles. The vessel arrived at Jamaica, where this crew quitted her from some motive of dissatisfaction as to the further voyage; and a new crew was shipped under new articles which describe the new voyage, and stipulate what wages should be paid. It appears that part of the cargo on board was on freight to La Vera Cruz, and that,

when this should be landed, the vessel was to cruize for six weeks. For the regulation of this cruize another set of articles was signed, by which it was fixed that the owners were to have three fourths of all prizes, and the seamen the remainder. The stipulated wages are decisive of the commercial character of this vessel, and distinguish her from a privateer.

Courts of admiralty have a general jurisdiction in causes civil and maritime; and the 9th section of the judiciary act of congress vests that power in this court. The case of seamen's wages comes within this description of causes; and this jurisdiction has been uniformly exercised by me, as regards foreigners generally. The consular convention with France formed a single exception in relation to seamen of that nation. If, then, the court is entitled to look into and decide upon the articles of seamen engaged on board a merchant vessel, shall that jurisdiction be ousted merely because the vessel is armed? In cases of bottomry and hypothecation, the power of the court seems to be conceded; why not in the case of wages also? If a vessel arrive here and it appear that the voyage was to end, or the seamen to be discharged, in this port, no objection could be made to the enforcement of the contract. It is the daily practice of our courts, as well as those of England; both are guided by the lex loci, and regulate their decisions accordingly. I very lately discharged two seamen from a British armed ship, because it appeared by the articles that they had engaged only to come to this port. The 25th article of the treaty with Great Britain has been relied on in the second place. But this evidently relates merely to prizes. It is found in all our treaties, and generally in those between commercial nations possessed of a naval power. It provides that the neutral power shall not take cognizance of prizes, and permits the captor to have an asylum in our ports till he shall see fit to proceed, with his prize, to the ports of his own nation. But this by no means excludes jurisdiction as to incidental matters not connected with the question of prize. Before this provision by treaty, neutral courts were frequently induced to restore prizes brought within their jurisdictional limits; that practice is effectually restrained by the clause relied on.

Yet there are cases even of prize where this court will interfere. It will restore American vessels brought as prize into this port. It will divest a French privateer of his British or Dutch prize taken within our jurisdictional limits, or by a vessel fitted out in our harbours. French prizes, under similar circumstances would be restored, without regard to the claim of a British or other captor. Each of these cases has occurred, been decided, and confirmed in every stage of appeal. The law is therefore, fixed.

But it is said that this power of discharg-

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

ing the crew of an armed vessel amounts to a power of laying her under embargo, for that she is prohibited by our laws from recruiting in our ports. In support of this argument, the act of congress of June, 1794 [1 Stat. 381], was quoted. That act is declaratory of the law of nations, confirms all the doctrine cited from Vattel, and provides, inter alia, that no foreign armed vessel shall add to her force, within our ports, by augmenting the number of her guns or other equipment solely applicable to war, nor enlist men for the service of a foreign state. But it has been determined, under this clause, that repairs necessary to put a vessel in statu quo, alterations in the manner of her equipment (without adding to her force) and the shipping of men to the amount of the original number that composed the crew, are not such infractions of the treaty as call for the interference of the court. If every man in the Bellona were changed, I should decide that our neutrality was not committed, provided the ship carried out the same number, and no more, that she brought in. I should willingly have got rid of the trouble that must attend an investigation of the merits of this cause. But I hold myself bound by law to retain the suit, and to direct that the claimant answer over.